John Shaeffer (SBN 138331)
jshaeffer@foxrothschild.com
Joshua Bornstein (SBN 311658)
jbornstein@foxrothschild.com
FOX ROTHSCHILD LLP
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Attorneys for Defendants and Counterclaimants,
IGEL BEAUTY, LLC, DANIEL BUI, TU BUI,
ALVIN BUI and ANDREW BUI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GLAM AND GLITS NAIL DESIGN, INC., a California corporation

Plaintiff,

v.

IGEL BEAUTY, LLC, a New Jersey limited liability company, DANIEL BUI, an individual, TU BUI, an individual, ALVIN BUI, an individual, ANDREW BUI, an individual LA-VI NAILS 1, LLC, a New Jersey limited liability company d/b/a "Lavi Nails"; and LAVI NAILS NWP MALL, LLC, a New Jersey limited liability company,

Defendants.

IGEL BEAUTY, LLC, a New Jersey limited liability company, DANIEL BUI, an individual, TU BUI, an individual, ALVIN BUI, an individual, ANDREW BUI, an individual,

Counterclaimants,

v.

GLAM AND GLITS NAIL DESIGN, INC., a California corporation,

Counterclaim-Defendant.

Case No.: CV-20-00088-JVS-DFM

Hon. James V. Selna

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE ALL OR PORTIONS OF THE OPINION TESTIMONY OF:**

1. **JULIA ROWE;**
2. **JOEL DELMAN;**
3. **TIMOTHY FLETCHER;**
4. **ROB WALLACE; AND**
5. **JASON ENGEL**

**MEMORANDUM OF POINTS AND AUTHORITIES**

[CONCURRENTLY FILED WITH DECLARATION OF JOHN SHAEFFER; AND [PROPOSED] ORDER]

Complaint filed: Jan. 15, 2020

**DATE:** June 6, 2022
**TIME:** 1:30 p.m.
**LOCATION:** Courtroom 10C

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 6, 2022 in Courtroom 10C, 10th floor of this Court located at 411 West 4th Street, Santa Ana, California, at 1:30 p.m., or as soon thereafter as the matter may be heard, Defendants and Counterclaimants iGel Beauty, LLC ("iGel") Daniel Bui, Tu Bui, Alvin Bui, and Andrew Bui (collectively, "Defendants") will and hereby do move this Court pursuant to Fed. R. Evid. 702, 403, and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and its progeny, to exclude the opinion testimony from the following experts of Plaintiff and Counterclaim-Defendant Glam and Glits Nail Design, Inc. ("Plaintiff" or "G&G"):

1. Julia Rowe – Defendants move to exclude Rowe's testimony regarding her disgorgement of profits opinion relating to Defendants' alleged infringement of US Design Patents D'813,551 ("Cap Patent") and D'836,441 ("Bottle Patent").

2. Joel Delman – Defendants move to exclude Delman's infringement opinions with respect to the Bottle Patent and US Design Patent D'758,737 ("D'737 Patent") on the grounds Delman's opinions are improperly based on a hypothetical accused product that the Defendants do not sell – a nail polish bottle without a label.

3. Timothy Fletcher – Defendants move to exclude Fletcher's rebuttal opinion to Defendants' expert witness, Dana Reinisch regarding the obviousness of the Cap Patent because Fletcher ignores the primary reference used by Ms. Reinisch in her report under the mistaken belief that the reference is not prior art, even though the parties do not dispute this fact. Defendants also seek to exclude Fletcher's rebuttal opinion to Ms. Reinisch regarding the obviousness of the D'737 Patent because Fletcher ignores the same prior art reference when used as a secondary reference with respect to the obviousness of the D'737 Patent.

4. Rob Wallace – Defendants move to exclude the entirety of Wallace's opinion testimony and the surveys he created to test secondary meaning and likelihood of confusion with respect to Plaintiff's asserted trade dress because: (a) Wallace's survey does not test for relevant secondary meaning; and (b) Wallace's likelihood of

confusion survey tests a hypothetical buying experience that is not relevant to the way in which the products are actually sold by the parties.

5. Jason Engel – Defendants move to exclude the entirety of Engel's opinion because he is being proffered to simply catalogue various corporate documents wholly unrelated to his expertise. His "opinion" is nothing more than a mock summation of evidence that will be introduced through other witness.

**Meet-and-Confer**

On Friday, April 22, 2022, counsel for the parties met-and-conferred concerning this motion in response to Defendants' request sent in writing on April 21, 2022. G&G indicated that it would oppose the motion. *See* Concurrently-filed Declaration of John Shaeffer ¶¶ 23-24.

Dated: May 9, 2022

FOX ROTHSCHILD LLP

By *_/s/ John Shaeffer_*
John J. Shaeffer
Joshua Bornstein
Attorneys for Defendants and Counterclaimants, IGEL BEAUTY, LLC, DANIEL BUI, TU BUI, ALVIN BUI, and ANDREW BUI

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1
II. RELEVANT BACKGROUND .......... 3
A. iGel Beauty .......... 3
B. The Prior Lawsuit and Settlement Agreement .......... 4
C. The Current Action .......... 4
III. LEGAL STANDARD .......... 5
IV. ARGUMENT .......... 6
D. Julia Rowe's Disgorgement Analysis Violates 35 U.S.C. § 289 .......... 6
E. Joel Delman's Infringement Analysis Ignores iGel's Labeling .......... 9
F. Timothy Fletcher Willfully Ignores Highly Relevant Prior Art .......... 10
G. Wallace's Survey Evidence and Related Opinions Should Be Excluded .......... 12
1. Wallace's Four Surveys .......... 12
2. Wallace's Surveys Do Not Meet *Daubert*'s "Fit" Requirement .......... 13
a. Wallace's Secondary Meaning Surveys are Fatally Flawed Because They Do Not Test for Secondary Meaning .......... 14
b. Wallace's Likelihood of Confusion Survey Tests a Hypothetical Market that Does Not Exist .......... 17
H. Jason Engel's Opinions Usurp the Role of the Trier of Fact .......... 20
V. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ....................17

*Ancho v. Pentek Corp*.,
157 F.3d 512 (7th Cir. 1998) ....................22

*Apple Inc. v. Samsung Elecs. Co.*,
No. 11-CV-01846-LHK, 2017 WL 3232424 (N.D. Cal. July 28, 2017) ............7

*In re: Autozone, Inc.*,
2016 WL 4208200 (N.D. Cal. Aug. 10, 2016) ....................16

*Estate of Barabin v. AstenJohnson, Inc.*,
740 F.3d 457 (9th Cir. 2014) ....................5

*Barnes v. City of Pasadena*,
No. 10-CV-00470-JHN-PJWX, 2011 WL 13143536 (C.D. Cal. May 5, 2011), *aff'd*, 508 F. App'x 663 (9th Cir. 2013) ....................20

*BDO Remit (USA), Inc. v. Stichting BDO*,
2012 WL 12895658 (C.D. Cal 2012) ....................13, 14

*In re C. R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig*.,
No. MDL 2187, 2018 WL 4219563 (S.D.W. Va. Sept. 5, 2018)....................21

*Clicks Billiards Inc. v. Sixshooters Inc.*,
251 F. 3d 1252 (9th Cir. 2001) ....................13

*Cooper v. Brown*,
510 F.3d 870 (9th Cir. 2007) ....................21

*Daubert v. Merrell Dow Pharms.*,
509 U.S. 579 (1993)....................5, 6

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*,
782 F.Supp. 457 (N.D. Cal. 1991)....................17

*EcoServices, LLC v. Certified Aviation Services, LLC*,
312 F.Supp.3d 830 (C.D. Cal. 2018) ....................10, 12

*Fontem Ventures, B.V. v. NJOY, Inc.*,
No. CV 14-1645-GW(MRWX), 2015 WL 12743861 (C.D. Cal. Oct. 22, 2015) ....10, 12, 20, 22

*Forney Indus., Inc. v. Daco of Mo., Inc.*,
835 F.3d 1238 (10th Cir. 2016) ....13

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010) ....13

*Gilmore v. Palestinian Interim Self--Gov't Auth.*,
843 F.3d 958 (D.C. Cir. 2016)....21

*Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of City of Detroit*,
50 F.3d 908 (11th Cir. 1995) ....22

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018)....8

*Ill. Tool Works, Inc. v. MOC Prods. Co.*,
2012 WL 3561984 (S.D. Cal. Aug. 17, 2012)....5

*Instant Media, Inc. v. Microsoft Corp.*,
2007 WL 2318948 (N.D. Cal. 2007) ....19

*International Jensen, Inc. v. Metrosound USA, Inc.*,
4 F. 3d 819 ....13

*J&J Snack Foods, Corp. v. Earthgrains Co.*,
220 F. Supp. 2d 358 (D.N.J. 2002)....14

*Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*,
761 F.2d 649 (Fed. Cir. 1985) ....6

*Kovary v. Honeywell Int'l, Inc.*,
No. CV 10-494-GW(CWX), 2014 WL 12564090 (C.D. Cal. Mar. 17, 2014) ....21

*L.A. Gear, Inc. v. Thom McAn Show Co.*,
988 F.2d 1117 (Fed. Cir. 1993) ....9

*Levi Strauss & Co. v. Blue Bell, Inc.*,
632 F.2d 817 (9th Cir. 1980) ....17

*Lindy Pen Co. v. BIC Pen Corp.*,
725 F.2d 1240 (9th Cir. 1984) ....................................................................19

*In re Live Concert Antitrust Litig.*,
863 F. Supp. 2d 966 (C.D. Cal. 2012) ...........................................................21

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
No. C-12-03694 DMR, 2014 WL 3417941 (N.D. Cal. July 11, 2014),
*aff'd*, 653 F. App'x 553 (9th Cir. 2016)............................................................20

*LVI XII Brands v. Louis Vuitton Malletier S.A.*,
209 F.Supp.3d 612 (S.D.N.Y. 2016) ..............................................................18

*Mana Products, Inc. v. Columbia Cosmetics Mfg., Inc.*,
858 F.Supp. 361 (1994) ..................................................................................14

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013) ...........................................................................21

*Mattel, Inc. v. MGA Entertainment, Inc.*,
782 F. Supp. 2d 911 (C.D. Cal. 2011) ............................................................13

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
138 F.3d 1437 (Fed. Cir. 1998) ....................................................................6, 7

*P&P Imports, LLC v. Johnson Enterprises LLC*,
2020 WL 6162154 (C.D. Cal. 2020) ..............................................................16

*Pinnacle Advertising and Marketing Group, Inc. v. Pinnacle and Marketing Group, LLC*,
2019 WL 7376782 (S.D. Fl. 2019).................................................................17

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) ..........................................................................21

*Salem v. U.S. Lines Co.*,
370 U.S. 31 (1962)..........................................................................................19

*Samsung Elecs. Co. v. Apple Inc.*,
137 S. Ct. 429 (2016)..........................................................................................7

*San Diego County Credit Union v. Citizens Equity First Credit Union*,
541 F.Supp.3d 1110 (S.D.Cal. 2021)...............................................................16

*Starter Corp. v. Converse, Inc.*,
170 F. 3d 286 (2d Cir. 1999) ....................................................................14

*THOIP v. Walt Disney Co.*,
690 F.Supp.2d 218 (S.D.N.Y. 2010) ..........................................................18

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992)......................................................................................13

*Valador, Inc. v. HTC Corp.*,
242 F. Supp. 3d 448 (E.D. Va.), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) ..........................................................................................................19

*Villalpando v. Exel Direct Inc.*,
161 F. Supp. 3d 873 (N.D. Cal. 2016)..........................................................8

*Vital Pharmaceuticals, Inc. v. Monster Energy Company*,
553 F.Supp.3d 1180 (S.D.Fl. 2021)..............................................................19

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*,
No. 211CV3473CBMPJWX, 2015 WL 13759740 (C.D. Cal. Oct. 26, 2015) .............................................................................................19, 21

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
529 U.S. 205 (2000)......................................................................................14

*Walt Disney Prods. v. Air Pirates*,
581 F.2d 751 (9th Cir. 1978) ........................................................................17

**Statutes**

15 U.S.C. § 1115(a) ......................................................................13, 14

35 U.S.C. § 284..................................................................................7

35 U.S.C. §289..................................................................1, 6, 7, 8

**Other Authorities**

Federal Rule of Evidence 403.........................................................passim

Federal Rule of Evidence 702.........................................................passim

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Each of the experts proffered by Plaintiff Glam and Glits Nail Design, Inc. ("G&G" or "Plaintiff") presents this Court with a highly unusual situation. While each are qualified in their respective fields and have been qualified by numerous courts, each makes what can only be characterized as novice errors in their methodology that render some or all of each of their opinions irrelevant in that they fail to conform to governing standards and are thus inadmissible because those opinions are simply not helpful to the jury. Defendants[1] address each expert separately below, but bring a single motion to exclude as follows:

**Julia Rowe**, G&G's remedy expert, purports to calculate the profits earned by the Defendants attributable to their alleged infringement of G&G's trade dress and Patents-in-Suit.[2] With respect to the Cap Patent and Bottle Patent, Rowe assumes that the relevant "article of manufacture" is something less than the "product sold" by Defendants, meaning there is no "total profit" from the "sale of the article of manufacture" as required by the "[a]dditional remedy for infringement of design patent[s]." 35 U.S.C. §289. Rather than calculating damages utilizing another traditional patent remedy, Rowe apportions some of profits from the "product sold" to derive hypothetical profits for the purported "articles of manufacture." In enacting Section 289, Congress, however, explicitly ruled out such an apportionment. Since her opinions in this regard are contrary to law, they are irrelevant, not helpful to the jury, and should be excluded.

**Joel Delman**, G&G's design infringement expert, makes a similar confounding error. While design patent infringement compares the design claimed against the accused product as it would be seen by an ordinary observer in the marketplace, Delman

[1] "Defendants" herein collectively refer to iGel Beauty, LLC ("iGel"), Daniel Bui, Andrew Bui, Alvin Bui and Tu Bui.

[2] The "Patents-in-Suit" herein collectively refer to U.S. Design Patent Nos. D'758,737 ("D'737 Patent"), D'813,551 ("Cap Patent"), and D'836,441 ("Bottle Patent").

decided to compare a hypothetical accused product that the Defendants do not sell – a nail polish bottle without a label. It is true that an accused product cannot defeat design patent infringement simply through labeling, but as this Court has already recognized, however, consideration of the label is still a requirement. Dkt. 164. Because Delman failed to consider the labeling of the accused product with respect to the Bottle Patent and D'737 Patent, his infringement opinion regarding those two patents cannot be helpful and would only mislead the jury.

**Timothy Fletcher**, G&G's rebuttal expert to Defendants' obviousness expert, makes a similarly unexpected error. Specifically, Fletcher ignores Defendants' primary reference as to the Cap Patent, as well as when the same reference is applied secondarily in the D'737 Patent. Fletcher ignores this reference, assuming that it is not prior art, even though the named inventors admitted that it was a product on the market at the time genus D'737 Patent was filed. One of the inventors even identified the reference as the "inspiration" for the design claimed in the Patents-in-Suit. ,Thus, his opinion is not relevant with respect to the Cap Patent and D'737 Patent.

**Rob Wallace**, G&G's trade dress infringement expert, makes such profound and startling errors with the surveys that his findings are simply irrelevant to G&G's trade dress infringement claim. Wallace's secondary meaning survey fails to measure secondary meaning. Wallace acknowledges that proof of secondary meaning requires both consumer awareness of the trade dress, as well as an association of that trade dress with a single source or affiliation. While his survey purports to include an awareness question, answers to that question, for whatever reason, were not tabulated. Without such information, his survey does no more than confirm that the packaging at issue is not generic, *i.e.* some respondents believed it could be associated with a single source. Without evidence of prior awareness of the packaging, however, the survey is legally irrelevant to the issue of secondary meaning.

Even more confounding is Wallace's likelihood of confusion survey. To be relevant, a likelihood of confusion survey must recreate a typical buying experience.

Wallace's survey, however, designed a hypothetical buying experience that does not exist. Since Wallace admits his design is not relevant to the actual buying experience, any confusion found would simply confuse the trier of fact.

**Jason Engel** is a recognized forensic accountant. Here, however, he simply catalogues various exhibits to be introduced through other witnesses and applies them to the factors relevant to an alter ego inquiry, which is something the trier of fact can competently do without the need for an expert. His "opinion" is nothing more than a mock summation. Since an expert cannot be used simply as a mouthpiece for counsel's argument, his opinions are not helpful, in that his conclusion on the documents are not outside conclusions any lay person could draw, and are, therefore, inadmissible and unduly prejudicial.

As such, for the reasons stated below, the proffered expert testimony should be excluded.

## II. RELEVANT BACKGROUND

### A. iGel Beauty

Defendants Daniel Bui, Tu Bui, Alvin Bui, and Andrew Bui are brothers. In June of 2012, Andrew formed Ideal Salon Solutions, LLC ("ISS") to import and sell professional nail care products, including gels and polishes. Dkt. 109 at Page ID #: 2786. By no later than November of 2013, it was marketing and selling gel polish under the iGel name, packaged in a stock bottle and cap imported from China. *Id*. By July of 2015, ISS switched the bottle's cap to the one accused in this case. *Id*.

By January of 2015, ISS had decided to launch a new brand, "Sky Beauty." *Id*. at Page ID #: 2787. ISS began marketing and selling its Sky Beauty brand no later than July of 2015. *Id*. In a letter dated July 28, 2015, G&G, through its counsel, demanded that ISS cease selling the Sky Beauty products, asserting that such sales infringed G&G's trademark and trade dress rights. *Id*.

On September 15, 2015, Sky Beauty LLC ("Sky Beauty") was formed to hold Sky Beauty's assets and iGel was formed to hold the iGel and iLacquer assets. *Id*. Shortly thereafter, ISS dissolved. *Id*.

In December 2016, iGel began developing a new brand "LB," and asked its supplier to design a new bottle distinct from the patented Kiara Sky design. *Id*. iGel began marketing and selling its new LB brand in its newly-designed bottle in early 2018. *Id*. at Page ID #: 2787-88.

In the spring of 2019, iGel was looking to update its packaging. *Id*. It placed the curved cap from the existing iGel and iLacquer bottle on the LB bottle. *Id*. iGel began selling iGel and iLacquer products in the LB bottle with a curved cap in September of 2019. *Id*. at Page ID #: 2788.

**B. The Prior Lawsuit and Settlement Agreement**

In July 2016, G&G filed a lawsuit against ISS and Sky Beauty alleging infringement of the D'737 Patent and the Kiara Sky trademark ("Prior Lawsuit") with respect to a product sold called SKY Match. Dkt. 44 ¶ 2. The Prior Lawsuit resulted in a settlement and the execution of a settlement agreement ("Settlement Agreement"). *Id*. ¶ 3, Ex. A. The Settlement Agreement was fully executed by and between Plaintiff, ISS, Sky Beauty and a third entity, Saigon Nail Supply on February 7, 2017. *Id*.

Pursuant to the terms of the Settlement Agreement, ISS, Sky Beauty, and Saigon Nail Supply each agreed to stop making, selling and marketing SKY Match products, and to cancel a trademark registration for the SKY MATCH mark. Dkt. 44, Ex. A ¶¶ 1-7. The terms of the Settlement Agreement are enforceable only against the signatories and their "successors, assigns, executors, administrators, heirs and estates." *Id*., ¶ 23.

**C. The Current Action**

This lawsuit involves three design patents owned by G&G that are essentially the same; two of which are simply components of the first. The genus D'737 Patent is for a nail polish bottle-and-cap. Dkt. 44 Ex. B. Its progeny are the designs for cap and bottle

components of the D'737 Patent separated into Cap Patent and Bottle Patent. Dkt. 44 Ex. C-D.

G&G's co-owners, Ana Tan and Khoa "Mike" Duong are the named inventors of the Patents-in-Suit. *See id.* Exs. B-D. G&G further alleges that some of iGel's gel and nail lacquer bottle/cap combinations infringe its asserted Kiara Sky trade dress. Dkt. 44 ¶¶ 107, 125.

G&G contracts with distributors to supply nail professionals, and Kiara Sky is available to end users on its website and through online retailers but is not available at brick and mortar beauty supply chains. Ex. 1[3] at 18:16-19:16, 47:2-7.

Likewise, iGel products are available to end users on its website and through online retailers. iGel does not sell its product on eBay. Ex. 2[4] at 160:2-7.

G&G also claims the Defendants are in breach of the Settlement Agreement from the Prior Lawsuit by claiming that each Defendant is a successor-in-interest to ISS and Sky Beauty or the alter egos of those companies. Dkt. 44 ¶¶ 7-8, 143-147.

## III. <u>LEGAL STANDARD</u>

Federal Rule of Evidence 702 permits experts qualified by "knowledge, skill, expertise, training, or education" to give opinion testimony if the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Experts may testify at trial "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* A court may admit expert evidence only if it is both relevant and reliable. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). District courts serve as a "gatekeeper" to exclude expert evidence that does not meet the requirements of Rule 702. *Ill. Tool Works, Inc. v. MOC Prods. Co.*, 2012 WL 3561984, at *5 (S.D. Cal. Aug.

---

[3] The deposition of Khoa Duong is attached to the Declaration of John Shaeffer ("Shaeffer Dec.") as Ex. 1. All other exhibits referenced herein are attached to the Shaeffer Dec.

[4] Relevant portions of the deposition of Julia Rowe are attached as Ex. 2.

17, 2012); *see Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). Because expert testimony has the potential to mislead a jury, courts must exercise greater control over experts than lay witnesses to ensure that all expert testimony is relevant ***and*** reliable. *Daubert*, 409 U.S. at 595.

Further, Federal Rule of Evidence 403 requires the exclusion of even relevant evidence "if its probative value is substantially outweighed by the danger" of "unfair prejudice, confusion of the issues, or misleading the jury[.]" *See* Fed. R. Evid. 403.

## IV. ARGUMENT

### D. Julia Rowe's Disgorgement Analysis Violates 35 U.S.C. § 289

Julia Rowe ("Rowe") is G&G's remedy expert, who purports to calculate the profits earned by the Defendants attributable to their alleged infringement of G&G's trade dress and design patents.[5] Rowe assumes that the relevant article of manufacture for the Bottle Patent and the Cap Patent are something less that the accused product sold by iGel. Ex. 3 [Rowe Report] ¶¶ 101-102. Rather than offering an opinion on a remedy other than disgorgement, since Defendants do not sell, and therefore do not derive any profits from the sale of such articles, Rowe offers an opinion apportioning some of the profits from the product sold by iGel in order to derive hypothetical profits. Ex. 2 at 24:14 – 31:8; 61:19 – 65:6; 213:21 – 218:20. Defendants, therefore, seek to exclude Rowe's disgorgement of profits opinions as they relate to Defendants' alleged infringement of the Bottle Patent and the Cap Patent.

Defendants acknowledge that unlike utility patents, disgorgement of profits is a remedy available in a design patent infringement case. *Compare Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 654 (Fed. Cir. 1985) (recovery of the infringer's profits not available to utility patent owner), *with Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1440 (Fed. Cir. 1998) (infringer's profits awardable for design patent infringement). However, with respect to the disgorgement remedy for

[5] Julia Rowe's expert report is attached as Ex. 3.

design patents, the law presents somewhat of an all-or-nothing approach.

Congress enacted 35 U.S.C. § 289, which provides that "[w]hoever …(1) applies a patented design, or any colorable imitation thereof, to any article of manufacture … or (2) sells … any [such] article of manufacture … shall be liable to the owner to the extent of his total profits, but not less than $250." Congress enacted Section 289 as an alternative disgorgement remedy available in design patents, but rejected the use of any allocation to derive the relevant profits. *See Nike, Inc.*, 138 F.3d 1443 (Fed. Cir. 1998) ("The additional remedy created in 1887 for design patents was enacted to overcome the allocation problem for designs, and did not deplete the remedies available for either utility or design patent infringement."); *Apple Inc. v. Samsung Elecs. Co*., No. 11-CV-01846-LHK, 2017 WL 3232424, at *2 (N.D. Cal. July 28, 2017) (recognizing that Federal Circuit holding in *Nike* that Congress rejected apportionment for design patent damages under § 289).

Under Section 289, a design patent infringer can be liable to the patent owner for "all of the profit[s] made…from the…sale of the ***article of manufacture*** to which [the patented] design or colorable imitation has been applied," but may not apportion the profits attributable to the infringer's use of the design patent where the article of manufacture is merely a component of the overall product sold. *See Samsung Elecs. Co. v. Apple Inc*., 137 S. Ct. 429, 434 (2016) (emphasis added). Accordingly, calculating damages under Section 289 is a two-step process. First, the "article of manufacture" must be identified, and second, a calculation must be made of the infringer's total profit through its infringing sale of that article of manufacture. *Id*. If, on the other hand, the "article of manufacture" is not something that is sold by the infringer, then the disgorgement remedy is limited to $250. *Id*.; *see* 35 U.S.C. §289. This, however, does not leave the design patent owner without any remedies since an election can be made for a reasonable royalty or the recovery of the patent owner's own lost profits. 35 U.S.C. § 284.

Rowe's report, here, is limited to an analysis of the disgorgement remedy of iGel's profits relating to its alleged infringement of the Patents-in-Suit and G&G's asserted trade dress. With respect to the Patents-in-Suit, Rowe assumes that the relevant "article of manufacture" for the Bottle and Cap Patents are something less that the accused products sold by iGel. Ex. 3 ¶¶ 101-102. Specifically, Rowe identifies the relevant article of manufacture for the Bottle Patent as iGel's bottle with polish inside, but without a cap. *Id*. ¶ 101. Likewise, Rowe identifies the relevant article of manufacture for the Cap Patent as iGel's applicator cap, but without the bottle or its contents. *Id*. ¶ 102.

There is no dispute that both the accused cap and accused bottle are independently sold by their respective manufacturers (and not iGel). Rowe admits that iGel does not sell applicator caps or empty bottles or filled bottles without caps. *Id*. ¶ 101 ("iGel sells an entire product to its customers and does not sell a liquid/bottle combination"); *id*. ¶ 102 ("iGel sells an entire product to its customers and does not sell the specific cap/brush combination"). For Defendants, the cap and bottle act as the packaging for the nail polish and gels that they sell. To accommodate for this, Rowe ***apportions*** some of the profits from the products actually sold by iGel in order to derive at hypothetical profits for the applicator cap vis-à-vis the Cap Patent and the liquid/bottle combination without a cap vis-à-vis the Bottle Patent. Ex. 2 at 24:14 – 31:8; 61:19 – 65:6; 213:21 – 218:20. This allocating of profits from the product actually sold is precisely the type of allocation Congress sought to avoid by enacting Section 289. To allow Rowe to proffer such an allocation opinion here would undermine that legislative purpose.

Since apportionment is not permitted, Rowe's disgorgement analysis is inadmissible. *Villalpando v. Exel Direct Inc*., 161 F. Supp. 3d 873, 895 (N.D. Cal. 2016) ("expert's reliance on *incorrect* legal assumptions [] warrant exclusion") (emphasis in original); *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.,* 340 F. Supp. 3d 934, 965 n.21 (N.D. Cal. 2018). Put differently, because the jury may not apportion, Rowe's opinions with respect to the Bottle and Cap Patents are contrary to law and are not helpful to the jury. Thus, her opinions as to the Bottle and Cap Patents should be excluded.

### E. Joel Delman's Infringement Analysis Ignores iGel's Labeling

Joel Delman ("Delman") is G&G's design infringement expert.[6] While design patent infringement compares the design claimed against the accused product as it would be seen by an ordinary observer in the marketplace, Delman decided to compare a hypothetical accused product that the Defendants do not sell – a nail polish bottle **without a label**. Ex. 5 [Delman Dep.] at 124:8 – 125:22; 127:17 – 129:14; 175:9 – 176:1; 195:10 – 196:23.

Delman opines that iGel's accused bottles and caps infringe the Patents-in-Suit. Ex. 4 [Delman Report] ¶¶ 29-30, 98. Delman's analysis presumes, however, that the labels found on the accused products must be ignored. Indeed, Delman freely admits that iGel's labeling was deliberately ignored by him in his infringement analyses. Ex. 5 at 124:8 – 125:22; 127:17 – 129:14; 175:9 – 176:1; 195:10 – 196:23.

> Q. Okay. And to address your concern about my use of language, **is it fair to say that your infringement opinion does not consider the label on the accused product in its infringement analysis?** So there's no affirmative action on your part?
>
> A. **That is correct. I do not regard the label as -- in my infringement analysis**.

*Id*. at 129:6-12.

As this Court previously ruled, "the label is relevant to the overall question of whether there is infringement." Dkt. 164 at 14. That is because, while labeling does not entirely negate design patent infringement (*L.A. Gear, Inc. v. Thom McAn Show Co*., 988 F.2d 1117, 1126 (Fed. Cir. 1993)), it is a factor **that must be considered** to the overall question of whether there is infringement." Dkt. 164 at 14 (citing *Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc*., 942 F.3d 1119, 1131 (Fed. Cir. 2019) (emphasis added).

---

[6] The export report of Joel Delman is attached as Ex. 4. Relevant portions of the deposition of Joel Delman are attached as Ex. 5.

While labeling alone is not determinative, the law requires that the accused product be compared as it would be encountered in the marketplace, which Delman has not done. Delman admits that he failed to give ***any*** consideration to the permanent labeling on the accused products. Instead, he reached his opinion exclusively without considering the labeling. Ex. 5 at 124:8 – 125:22; 127:17 – 129:14; 175:9 – 176:1; 195:10 – 196:23. Whether or not an ordinary consumer would be confused if they encounter the accused products without their label is legally irrelevant because Delman cannot cite any instance where such an encounter would occur. Thus, Delman's design patent infringement opinion is legally irrelevant and cannot be helpful to the jury and should be excluded. *See Fontem Ventures, B.V. v. NJOY, Inc.*, No. CV 14-1645-GW(MRWX), 2015 WL 12743861, at *10 (C.D. Cal. Oct. 22, 2015) (excluding expert with "faulty understanding of the claim construction" as "unreliable and unhelpful to the jury"); *see also, EcoServices, LLC v. Certified Aviation Services, LLC*, 312 F.Supp.3d 830, 838-39 (C.D. Cal. 2018) (excluding expert who relied on incorrect patent because "such reliance is unreliable and misleading to the jury").

**F. Timothy Fletcher Willfully Ignores Highly Relevant Prior Art**

Timothy Fletcher ("Fletcher") is G&G's rebuttal expert to Defendants' obviousness expert, Dana Reinisch.[7] Ms. Reinich opines that the Patents-in-Suit are obvious in view of certain prior art references. Of relevance to this motion, Ms. Reinisch opines that the Cap Patent and the cap component of the D'737 Patent are both rendered obvious in view of the prior art Nanacoco cap depicted below:

[7] Dana Reinisch's expert report on the obviousness of the Patents-in-Suit is attached as Ex. 6. The rebuttal report of Timothy Fletcher's is attached as Ex. 7.

| Cap Patent | Prior Art “Nanacoco” |
|---|---|
|  |  |

*See* Ex. 6 [Reinisch Report] at pp. 22, 33-34.

In his rebuttal report, rather than address Ms. Reinisch’s opinion, Fletcher wholly ignores this prior art reference claiming, “Defendant has not provided enough evidence to show that the prior art relied on was indeed publically [*sic*] available prior to the ‘551 Patent.” Ex. 7 [Fletcher Report] ¶¶ 60, 62-63. Fletcher makes the same assertion with respect to the D’737 Patent. *Id.* ¶¶ 100, 105-106. Apparently, Fletcher did not know that the parties had already agreed that the Nanacoco reference, shown above, is prior art to all of the Patents-in-Suit.[8] Ex. 9 [G&G 30(b)(6) Dep.] at 115:10 – 118:1; Ex. 10 [Ex. 1070]; Ex. 11 [Tan Dep.] at 69:8-70:18; 78:4-20; 100:19-23; Ex. 12 [Ex. 1003]. Rather than assume the Nanacoco reference could be prior art and testify as to what, if any impact, that assumption might have on his opinion, Fletcher simply stood firm playing ostrich with Nanacoco.[9] Ex. 8 [Fletcher Dep.] at 114:5 – 116:9; 118:14-18; 120:3-7; 121:3-21; 125:15 – 126:8; 131:9 – 132:4; 134:14 – 135:16.

[8] Relevant portions of the deposition of Khoa “Mike” Duong as G&G’s Rule 30(b)(6) witness are attached as Ex. 9. Relevant portions of the deposition of Ana Tan are attached as Ex. 11.

[9] Relevant portions of his deposition of Timothy Fletcher are attached as Ex. 8.

As such, Fletcher's opinion regarding the Cap Patent and D'737 Patent are irrelevant and unhelpful to the jury. *See Fontem Ventures, B.V.*, 2015 WL 12743861, at *10; *EcoServices, LLC,* 312 F.Supp.3d at 838-39.

### G. Wallace's Survey Evidence and Related Opinions Should Be Excluded

#### 1. Wallace's Four Surveys

Rob Wallace ("Wallace") is G&G's trade dress infringement expert. Wallace executed four surveys.[10] Ex. 13. Two surveys tested secondary meaning with consumers of nail products and those who were identified as nail care professionals. Two other surveys tested likelihood of confusion with consumers of nail products and those who were identified as nail care professionals. With respect to his secondary meaning surveys, Wallace acknowledges that proof of secondary meaning requires both consumer identity of the trade dress, as well as an association of that trade dress with a single source or affiliation. In fact, Wallace specifically included a survey question directed to the identity question. Ex 13 [Wallace Report] at 23-24, §G, ¶61. His survey results, however, do not quantify the results for that question, leaving the field entirely blank for that highly-relevant question.[11] Ex. 15 [Wallace Dep.] at 61:25 – 64:10; 71:8 – 74:21; 76:6 – 79:11; Exs. 16-18 [Wallace Dep. Exs. 1096, 1097, 1100].

Wallace's likelihood of confusion surveys suffers from a similar terminal failing. A secondary meaning survey must recreate a typical buying experience. In order to find any semblance of confusion, however, Wallace was forced to concoct a hypothetical buying experience so attenuated from reality that its findings can be of no help to the jury because, as he admits, it has no relevance to any actual buying experience. Ex. 15 [Wallace Dep.] at 138:2 – 150:4; 150:16 – 153:17.

[10] The expert report of Rob Wallace is attached as Ex. 13. The supplemental report of Rob Wallace is attached as Ex. 14.

[11] Relevant portions of the deposition of Rob Wallace are attached as Ex. 15.

**2. Wallace's Surveys Do Not Meet *Daubert*'s "Fit" Requirement**

To sustain a claim for trade dress infringement, G&G must prove: "(1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive[] or has acquired secondary meaning; and (3) that the defendant's product creates a likelihood of consumer confusion." *Clicks Billiards Inc. v. Sixshooters Inc.,* 251 F. 3d 1252, 1258 (9th Cir. 2001). Because G&G's asserted trade dress is unregistered, it receives no presumption of secondary meaning or inherent distinctiveness. *See* 15 U.S.C. § 1115(a); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

Trade dress is inherently distinctive if it "is of such an unusual design that a buyer will immediately rely on it to differentiate the source of the product[.]" *Mattel, Inc. v. MGA Entertainment, Inc*., 782 F. Supp. 2d 911, 1004 (C.D. Cal. 2011); *Forney Indus., Inc. v. Daco of Mo., Inc*., 835 F.3d 1238, 1244 (10th Cir. 2016) ( "A mark is 'inherently distinctive if its intrinsic nature serves to identify a particular source.'").

"If the mark is not inherently distinctive, it can gain protection only once 'it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself.'" *Forney Indus., Inc*., 835 F.3d at 1245 (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc*., 529 U.S. 205, 211 (2000)). Thus, "secondary meaning is a learned association, an 'acquired distinctiveness.'" *International Jensen, Inc. v. Metrosound USA, Inc*., 4 F. 3d 819, 825 (quoting *Two Pesos, Inc.,* 505 US at 769).

In an apparent concession that its trade dress is not inherently distinctive, G&G commissioned Wallace to conduct both secondary meaning and likelihood of confusion surveys.

While both sets of surveys suffer from a panoply of methodical flaws, Defendants here do not challenge their reliability. Instead, Defendants challenge their "fit." *BDO Remit (USA), Inc. v. Stichting BDO*, 2012 WL 12895658, *11 (C.D. Cal 2012); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc*., 618 F.3d 1025, 1036 (9th

Cir. 2010) ("survey evidence should be admitted as long as it is conducted according to accepted principles and is relevant"). "Although the Daubert Court recognized that the 'fit' requirement goes primarily to relevance, it did not intend the second prong of Rule 702 to be merely a reiteration of the general relevancy requirement of Rule 402." *BDO Remit (USA), Inc.*, WL 12895658, *11 (citing *Daubert v. Merrell Dow Pharms. Inc.*, 43 F.3d 1311, 1321 n. 17 (9th Cir. 1995)). "Rather, because expert testimony has special dangers for the fact-finding process, courts must exclude it under Rules 702 and 403 'unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury.'" *Id.* at 1321 n.17. If a consumer survey is only marginally relevant, or wholly irrelevant, to the key issues in a Lanham Act case, the "survey may be kept from the jury's attention entirely." *Starter Corp. v. Converse, Inc.*, 170 F. 3d 286, 297 (2d Cir. 1999). To be relevant, "the survey's design must fit the issue which is to be decided by the jury…." *J&J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 370 (D.N.J. 2002). As discussed below, Wallace's surveys and his opinions based thereon should be excluded because they are not relevant and do not meet the "fit" requirement.

**a. Wallace's Secondary Meaning Surveys are Fatally Flawed Because They Do Not Test for Secondary Meaning**

According to Wallace, proper testing for secondary meaning (*i.e.*, acquired distinctiveness) requires proof of both consumer prior awareness of the trade dress and their identification of that dress with a single source or sponsor. Ex. 15 [Wallace Dep.] at 66:5-24; 69:16 – 70:20; 124:22 – 126:17. Absent awareness, responses suggesting that particular packaging comes from a particular source is simply testing for non-genericness, *i.e.*, that the packaging is something more than a common brown paper bag. *Cf. Mana Products, Inc. v. Columbia Cosmetics Mfg., Inc.*, 858 F.Supp. 361 (1994) (comparing packaging trade dress to a brown paper bag); *Wal–Mart Stores*, 529 U.S. at 211 (trade dress acquires secondary meaning "when, in the minds of the public, the

primary significance of [the trade dress] is to identify the source of the product rather than the product itself").

Here, Wallace's survey design intended to address the awareness requirement by asking both consumers and professional respondents if they recognized the product (*i.e.*, had they seen the G&G trade dress before). Ex 13 [Wallace Report] at 23-24, §G, ¶61. Specifically, Question 16 of both surveys presented respondents with the following prompt:




Do you recognize this product?

Yes
No
Don't know, not sure

Ex. 16 [Wallace Dep. Ex. 1096].

Significantly, **<u>the responses to these questions are missing from both surveys</u>**.

**Q16 - {Graphic: kblank.jpg} Do you recognize this product?**

| | | Frequency | Percent |
|---|---|---|---|
| Missing | System | 239 | 100.0 |

Ex. 17 [Wallace Dep. Ex. 1097 (results from professional survey)].

**Q16 - {Graphic: kblank.jpg} Do you recognize this product?**

| | | Frequency | Percent |
|---|---|---|---|
| Missing | System | 400 | 100.0 |

Ex. 18 [Wallace Dep. Ex. 1100 (results from consumer survey)].

Wallace admits that he did not compile this data and assumes that the vendor he hired to conduct this survey asked the question and simply neglected to include the results. Ex. 15 [Wallace Dep.] at 61:25 – 64:10; 71:8 – 74:21; 76:6 – 79:11. There is no way, however, for Wallace to substantiate his back-peddling since he was not the one who conducted the survey, and he admits that he merely relied on the information his vendor sent to him. *Id*. at 64:4-21; 130:22 – 131:3. As such, Wallace's inability to establish that his "secondary meaning" survey tested for "acquired distinctiveness" renders the survey unhelpful to the jury because, absent any evidence of existing awareness, the survey is silent on anything "acquired." *Compare San Diego County Credit Union v. Citizens Equity First Credit Union,* 541 F.Supp.3d 1110 (S.D.Cal. 2021) (court accepted but gave less weight to a survey where secondary meaning questions were not "model secondary meaning questions accepted by survey experts but cases have held that such questions may be acceptable or given some weight to show secondary meaning.").

Judge Carter expressly rejected Wallace's methodology in a case where Wallace actually found that 63% of respondents "believe that Plaintiff's product is from a single source or company," because such evidence did not "help Plaintiff meet its burden to show that the trade dress has become associated with *Plaintiff itself*." *P&P Imports, LLC v. Johnson Enterprises LLC*, 2020 WL 6162154, *4 (C.D. Cal. 2020) (citing *Fleischer Studios, Inc. v. A.V.E.L.A.*, Inc., 654 F.3d 958, 966-67 (9th Cir. 2011) (emphasis in original)); *see also In re: Autozone, Inc*., 2016 WL 4208200, *16 (N.D. Cal. Aug. 10, 2016). ("[S]ubstantial deficiencies in the design or execution of a survey

of individuals is grounds of its complete exclusion.") (quoting *Gibson v. City. of Riverside*, 181 F. Supp. 2d 1057, 1067 (C.D. Cal. 2002). Likewise, this Court should exclude Wallace's survey opinion.

**b. Wallace's Likelihood of Confusion Survey Tests a Hypothetical Market that Does Not Exist**

Wallace's likelihood of confusion surveys also fail the fit requirement – they lack relevance to this case – because they test for confusion in a market that does not likely even exist. Since a jury should not be left to guess how confusion from an encounter untethered to the facts of this case relates to a likelihood of confusion relevant to this case, this is one of those rare instances where a survey should be excluded. *See Pinnacle Advertising and Marketing Group, Inc. v. Pinnacle and Marketing Group, LLC*, 2019 WL 7376782, *7 (S.D. Fl. 2019) ("Although the flaws in an accepted methodology of conducting a survey ordinarily go to the weight assigned to the survey and not their admissibility, I conclude that Wallace's survey is so unreliable that it must be excluded.").

Both the Plaintiff and Defendants primarily sell their products in two ways: direct orders from wholesalers, who resell to the professional marketplace, and to retail customers on their respective websites – www.kiarasky.com and www.igelbeauty.com. Ex. 1 [Deposition of Khoa Duong] at 18:16-19:16, 47:2-7.] Obviously, to get to either website, or to otherwise order directly, customers must connect with G&G or iGel, respectively – *i.e.,* they must know the brands – and there is no dispute Kiara Sky products are not available from iGel or *vice versa*. Moreover, nothing in the record suggests that consumers would ever encounter these products side-by-side.

Rather than recognize market realities[12] – likely out of fear no confusion would be found – and without identifying any meaningful instances where the relevant products could actually be encountered side-by-side, Wallace concocted a highly suspect side-by-

---

[12] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir. 1979) ("A jury is required to assess trade dresses "as they are encountered in the marketplace.").

side likelihood of confusion survey. *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F.Supp. 457, 466 (N.D. Cal. 1991) ("'The proper test for likelihood of confusion is not whether consumers would be confused in a side-by-side comparison of the products, but whether confusion is likely when a consumer, familiar with the one party's mark, is presented with the other party's goods alone.'" (quoting *Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.*, 673 F.Supp. 1238, 1248 (S.D.N.Y. 1987)); *Levi Strauss & Co. v. Blue Bell*, *Inc*., 632 F.2d 817, 822 (9th Cir. 1980) ("It is axiomatic in trademark law that 'side-by-side' comparison is not the test."); *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 759 (9th Cir. 1978) ("While a comparison of the mark and the imitation is one such factor, that comparison should not be a simple, visual, side-by-side comparison but rather the mark and the imitation should be viewed in light of what occurs in the marketplace, ... taking into account the circumstances surrounding the purchase of the goods.") (internal citations and quotations omitted)).

iGel does not sell its products on eBay. Ex. 2 at 160:2-7. Wallace, however, purportedly found some re-sellers who were selling either iGel or Kiara Sky on eBay and decided to test for likelihood of confusion on that third-party retailer site. While this alone would not be a reason to exclude Wallace's surveys, what he does next simply crosses the line to absurdity. Despite knowing that most consumers would search for nail polish on a third-party retail site by brand name, Wallace assumes instead that the consumers use a generic search term "nail polish" on the site. Knowing that such a search would most likely result in a list of results rather than products side-by-side, Wallace assumes that this hypothetical consumer must have two separate web browsers open at the same time, side-by-side, both running the same generic search for "nail polish." Then, like the spin of a slot machine, the search of "nail polish" on each result in G&G's trade dress packaging being side-by-side with the accused, which would be nothing short of a miracle. Ex. 15 [Wallace Dep.] at 138:2 – 150:4; 150:16 – 153:17; 156:5 – 158:22.

While Wallace opines that a survey based on these fanciful market conditions shows meaningful confusion, he cannot show how these results have relevance to how these products are actually encountered in the marketplace. *Id.*; McCarthy on Trademarks and Unfair Competition § 32:159 (5th Ed. 2021) "'A survey that provides information about a wholly irrelevant population is itself irrelevant.'" (quoting Reference Manual on Scientific Evidence 377–378 (Federal Judicial Center 3rd ed. 2011)). For this reason, Wallace's likelihood of confusion survey "fails Daubert's 'fit' requirement. It is mismatch for the facts of this case, because [his] relevant consumer market lacks record foundation." *LVI XII Brands v. Louis Vuitton Malletier S.A.*, 209 F.Supp.3d 612, 640 (S.D.N.Y. 2016); *THOIP v. Walt Disney Co.*, 690 F.Supp.2d 218, 241 (S.D.N.Y. 2010) ("Because the Ford Survey failed to replicate actual marketplace conditions in which consumers encountered the products at issue here and failed to use an adequate control, it is not a reliable indicator of consumer confusion. Accordingly, the Ford Survey is inadmissible.") *see also, Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 462 (E.D. Va.), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) (excluding survey as "unreliable because it failed to replicate actual market conditions in which consumers might encounter the parties' marks."). While Wallace's survey may suggest consumer recognition of similarity between G&G's asserted trade dress and the accused product, such recognition is not relevant since it does not consider the "way the marks are encountered in the marketplace and the circumstances surrounding the purchase of the [products]," including "appearance of the [products], their packaging, and their promotional materials." *Lindy Pen Co. v. BIC Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984); *Instant Media, Inc. v. Microsoft Corp.*, 2007 WL 2318948 *14 (N.D. Cal. 2007) ("To be admissible, a likelihood of confusion survey must 'be designed to examine the impression presented to the consumer by the accused product.'" (quoting *Conopco, Inc. v. Cosmair, Inc.*, 49 F.Supp.2d 242, 253 (S.D.N.Y.1999)); *Vital Pharmaceuticals, Inc. v. Monster Energy Company*, 553 F.Supp.3d 1180, 1245 (S.D.Fl. 2021) (affording

survey no weight because the design bore no relationship to how consumers would actually encounter the product).

Wallace's inability to draw any nexus between his likelihood of confusion survey and the record facts of this case makes his survey irrelevant and warrants its exclusion at this time. The jury should not be left simply to guess how Wallace's fanciful test has any relevance to market realities.

### H. Jason Engel's Opinions Usurp the Role of the Trier of Fact

Expert testimony should be excluded under Rule 702 "where the jury can understand the concepts at issue without the assistance of expert opinion." *W. Sugar Coop. v. Archer-Daniels-Midland Co.*, No. 211CV3473CBMPJWX, 2015 WL 13759740, at *1 (C.D. Cal. Oct. 26, 2015); *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962) (expert testimony is unnecessary and properly excluded when jury can understand the primary facts and draw correct conclusions from them). "Courts agree that it is improper to permit an expert to testify regarding facts that people of common understanding can easily comprehend." *Fontem Ventures, B.V. v. NJOY, Inc.*, No. CV 14-1645-GW(MRWX), 2015 WL 12743861, at *19 (C.D. Cal. Oct. 22, 2015) (internal quotations omitted) (excluding testimony that "is little more than layperson testimony that usurps the role of the jury"); *see Barnes v. City of Pasadena*, No. 10-CV-00470-JHN-PJWX, 2011 WL 13143536, at *4 (C.D. Cal. May 5, 2011), *aff'd*, 508 F. App'x 663 (9th Cir. 2013) (excluding "opinions regarding whether or not a gun is visible on [a] video" since it was something the jury was competent to do on their own). Expert testimony which "merely summarizes the record evidence and gratuitously interprets it" should be excluded. *See Lord Abbett Mun. Income Fund, Inc. v. Asami*, No. C-12-03694 DMR, 2014 WL 3417941, at *13 n.8 (N.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 553 (9th Cir. 2016).

Plaintiff seeks to bind the Defendants in this lawsuit to the Settlement Agreement from the Prior Lawsuit by claiming, in part, that each Defendant is the alter ego of the parties to the Settlement Agreement (*i.e.*, ISS and Sky Beauty). Dkt. 44 ¶¶ 7-8. To

establish alter ego liability, Plaintiff retained a forensic accountant, Jason Engel ("Engel"), to simply catalogue various corporate documents among the factors a trier of fact can consider in determining such liability. A task wholly unrelated to his expertise.[13] Engel's opinion offers no explication as to how the various companies are/were organized.[14] Indeed, Engel admits that he knows very little about the companies about which his report is based. Ex. 20 [Engel Dep.] at 188:7 -193:14; 197:3-11; 201:8-17.

Engel has no expertise with respect to his retention, and only has a "general understanding," of "what commingling means" and "what identical equitable ownership" means. *Id*. at 58:11-20. He admits "there is no issue of undercapitalization" with respect to ISS, Sky Beauty or iGel. *Id*. at 102:9 – 103:9; 211:11 – 212:14. Circularly, Engel testified that he "assumed liability" in order to opine on alter ego liability. *Id*. at 96:18 – 103:9; 206:1 -209:3. "This unhelpful tautology fails to explain what that 'scientific reason' might be, or how one might reach such a conclusion." *Kovary v. Honeywell Int'l, Inc*., No. CV 10-494-GW(CWX), 2014 WL 12564090, at *4 (C.D. Cal. Mar. 17, 2014); *see also, In re Live Concert Antitrust Litig*., 863 F. Supp. 2d 966, 976 (C.D. Cal. 2012) (excluding expert's "yardstick" approach because the "'analysis' amounts to nothing more than a simple tautology").

Engel is simply being used as an attorney mouthpiece to apply the evidence [some of which appears inadmissible] to the various alter ego factors, which he refers to as "alter ego indicia." Ex. 19 [Engel Report] ¶¶ 5-20; Ex. 20 [Engel Dep.] at 27:21 – 28:22; 166:12-23; 72:18-23; 101:22-25. Yet, "simply reading a document into evidence does not require 'scientific, technical, or other specialized knowledge.'" *In re C. R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig*., No. MDL 2187, 2018 WL 4219563, at *5 (S.D.W. Va. Sept. 5, 2018); *see Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136

[13] The expert report of Jason Engel is attached as Ex. 19. Relevant portions of the deposition of Jason Engel are attached as Ex. 20.

[14] *See e.g., Sheet Metal Workers Int'l Ass'n Loc. Union No. 67 v. Todd-Ford Mgmt.* Co., No. SA-03-CA-290-XR, 2005 WL 5977617, at *2 (W.D. Tex. July 12, 2005) (explaining that expert witnesses may testify as to how companies are organized, but not whether companies were alter egos of one another).

(2d Cir. 2013) ("a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony").

Because Engel's opinion is nothing more than applying evidence to the alter ego factors, his opinion lacks relevance since it will not assist the trier of fact in understanding concepts that cannot be understood without the assistance of expert opinion. *W. Sugar Coop.*, 2015 WL 13759740, at *1; *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (Relevance, "means that the evidence will assist the trier of fact to understand or determine a fact in issue."); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance."). Where, as here, "the jury is just as competent to consider and weigh the evidence as is an expert witness and just as well qualified to draw the necessary conclusions therefrom, it is improper to use [expert] evidence[.]" *Gilmore v. Palestinian Interim Self--Gov't Auth.*, 843 F.3d 958, 973 (D.C. Cir. 2016) (quoting *Henkel v. Varner*, 138 F.2d 934, 935 (D.C. Cir. 1943); *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998) ("[A]n expert... must testify to something more than what is obvious to the layperson in order to be of any particular assistance to the jury." (internal quotation marks omitted)); *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995) ("Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves."); *Fontem Ventures, B.V.*, 2015 WL 12743861, at *19. Accordingly, Engel's opinions should be excluded.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court grant this motion and exclude:

1. Julia Rowe's disgorgement of profits opinion relating to Defendants' alleged infringement of the Cap and Bottle Patents;

2. Joel Delman's infringement opinions with respect to the Bottle Patent and the D'737 Patent;

3. Timothy Fletcher's rebuttal opinion regarding the obviousness of the Cap Patent and D'737 Patent;

4. The entirety of Rob Wallace's opinion and survey evidence; and

5. The entirety of Jason Engel's alter ego opinion.

Dated: May 9, 2022

Respectfully submitted,

FOX ROTHSCHILD LLP

By *__/s/ John Shaeffer__*
John J. Shaeffer
Joshua Bornstein
Attorneys for IGEL BEAUTY, LLC, DANIEL BUI, TU BUI, ALVIN BUI, and ANDREW BUI