John Shaeffer (SBN 138331)
    jshaeffer@foxrothschild.com
Joshua Bornstein (SBN 311658)
    jbornstein@foxrothschild.com
FOX ROTHSCHILD LLP
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Attorneys for Defendants and Counterclaimants,
IGEL BEAUTY, LLC, DANIEL BUI, TU BUI,
ALVIN BUI and ANDREW BUI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLAM AND GLITS NAIL DESIGN, INC., a California corporation<br><br>Plaintiff,<br><br>v.<br><br>IGEL BEAUTY, LLC, a New Jersey limited liability company, DANIEL BUI, an individual, TU BUI, an individual, ALVIN BUI, an individual, ANDREW BUI, an individual LA-VI NAILS 1, LLC, a New Jersey limited liability company d/b/a "Lavi Nails"; and LAVI NAILS NWP MALL, LLC, a New Jersey limited liability company,<br><br>Defendants. | Case No.: CV-20-00088-JVS-DFM<br><br>Hon. Magistrate Judge Douglas F. McCormick<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S OPENING BRIEF RE REMOTE DEPOSITION OF CHINESE WITNESS IN MAINLAND CHINA**<br><br>**DISCOVERY MATTER**<br><br>Hearing:      September  27, 2022<br>Time:          10:00 a.m. |
| IGEL BEAUTY, LLC, a New Jersey limited liability company, DANIEL BUI, an individual, TU BUI, an individual, ALVIN BUI, an individual, ANDREW BUI, an individual,<br><br>Counterclaimants,<br><br>v.<br><br>GLAM AND GLITS NAIL DESIGN, INC., a California corporation,<br><br>Counterclaim-Defendant. | |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  RELEVANT BACKGROUND ........................................................................... 2

III.  LEGAL STANDARD ......................................................................................... 7

   A.  Article 284 of the Chinese Civil Procedure Law ................................. 7

   B.  Remote Depositions Take Place Where the Deponent Answers Questions ....... 8

   C.  Federal Rule of Civil Procedure 44.1 and Defendants' Exhibits 2 – 4 .............. 8

IV.  ARGUMENT ..................................................................................................... 9

   A.  Plaintiff's Interpretation of Article 284 Ignores its Plain Language ................. 9

   B.  Plaintiff's Interpretation of Article 284 Is Contradicted By Other Experts ...... 10

   C.  The U.S. State Department Disagrees with Plaintiff's Position ..................... 12

   D.  Courts Around the Country Consistently Reject Requests to Depose Chinese Citizens in Mainland China ................................................... 13

   E.  Courts Have Rejected Richard K. Wagner's Opinions on Chinese Law ......... 16

V.  CONCLUSION ................................................................................................ 17

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Brown v. China Integrated Energy, Inc.*,
    No. CV11-2559-BRO(PLAx), 2014 WL 12580245 (C.D. Cal. Aug. 6,

6

    2014)................................................................................................15

7

*Excel Fortress Ltd. v. Wilhelm*,
    No. CV-17-04297-PHX-DWL, 2020 WL 1330664 (D. Ariz. Mar. 23,

8

    2020)................................................................................................14

9

*Flexsteel Pipeline Techs., Inc. v. Chen*,
    No. 5:16-CV-239-TKW-GRJ, 2019 WL 13164175 (N.D. Fla. Nov.

10

    26, 2019)..........................................................................................14

11

*Inventus Power v. Shenzhen Ace Battery*,

12

    339 F.R.D. 487 (N.D. Ill. 2021) ........................................9, 12, 14, 17

13

*Inventus Power v. Shenzhen Ace Battery*,

14

    Case No. 1:20-cv-3375, Dkt. No. 106-1 (N.D. Ill. Dec. 2, 2020)......................9

15

*Junjiang Ji v. Jling Inc.*,

16

    No. 15-CV-4194 (SIL), 2019 WL 1441130 (E.D.N.Y. Mar. 31, 2019) .....13, 14

17

*JUUL Labs Inc. v. Chou*,
    No. 2:21-CV-03056-DSF-PD, 2022 WL 2165411 (C.D. Cal. Feb. 11,

18

    2022)................................................................................................15

19

*Liu v. Chan*,

20

    No. 18-CV-05044-KAM-SJB, 2022 WL 2467015 (E.D.N.Y. Jan. 26,

21

    2022)................................................................................................14

22

*Melaleuca, Inc. v. Kot Nam Shan*,

23

    No. 4:18-CV-00036-DCN, 2018 WL 1952523 (D. Idaho Apr. 24,

24

    2018)................................................................................................14

25

*Modern Investment, Inc. et al. v. Sunleader (Saipan) Co. Ltd., et al.*,

26

    Civil Case No. 19-0266 (N. Mar. I. Commw. April 8, 2021)...........1, 10, 16, 17

27

*Motorola v. Hytera*,

28

    365 F. Supp. 3d 916 (N.D. Ill. 2019)................................................10

137872369.1

*Shenzen Synergy Digital Co., Ltd. v. Mingtel*,
  Civil Action No. 4:19-cv-00216, 2021 WL 6072565 (E.D. Tex. Dec. 23, 2021)..........................................................................................15

*Shi Min Chen v. Hunan Manor Enter., Inc.*,
  No. 17CIV802GBDGWG, 2020 WL 4932777 (S.D.N.Y. Aug. 24, 2020)...................................................................................................15

*Smart Study Co. v. Acuteye-Us*,
  No. 1:21-CV-5860-GHW, 2022 WL 2872297 (S.D.N.Y. July 21, 2022)...................................................................................................16

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
  No. 17-CV-02191-SK, 2019 WL 6134958 (N.D. Cal. Nov. 19, 2019).............7

*Tsien v. Bd. of Regents of Univ. Sys. of Georgia*,
  No. CV 121-008, 2021 WL 6617308 (S.D. Ga. Dec. 20, 2021)..................8, 14

*U.S. Securities and Exchange Commission v. Deloitte Touche Tohmatsu CPA LTD.*,
  Case No. 1:11-cv-00512-GK .........................................................................8

*U.S. v. Proceeds from Sale of a Condo. Located at Ritz Carlton in Los Angeles California*,
  No. SACV-1501110-JVS(DFMx), 2020 WL 10895336 (C.D. Cal. Mar. 30, 2020) ...............................................................................15

*U.S. v. Tao*,
  No. 19-20052-JAR, 2021 WL 5205446 (D. Kan. Nov. 9, 2021).....................14

*U.S.Av. G.M. dos Reis Jr. Ind. Com. De Equip. Medico*, No. CIV 07-CV-309-L...........................................................................................11

*Yan v. Zhou*,
  No. 18-CV-4673(GRB)(JMW), 2021 WL 4059478 (E.D.N.Y. Sept. 7, 2021)...................................................................................14

*Zhizheng Wang v. Hull*,
  No. C18-1220RSL, 2020 WL 4734930
  (W.D. Wash. June 22, 2020) ............................................................14, 16, 17

**Statutes**

Fed. R. Civ. P. 30(b)(4) ............................................................................8

Fed. R. Civ. P. 32......................................................................1, 12, 13

Fed. R. Civ. P. 44.1 .....................................................................................8

**Other Authorities**

Chinese Civil Procedure Law, Article 284......................................*passim*

Craig Allely, *Successful Depositions in International Litigation,*
    37 No. 4 LITIGATION 12 (Summer 2011)...........................................15

Fang Shen, *Are You Prepared for This Legal Maze? How to Serve Legal*
    *Documents, Obtain Evidence, and Enforce Judgments in China,*
    72 UMKC L. Rev. 215 (2003) ............................................................16

*Taking Voluntary Depositions of Willing Witnesses* U.S. DEP'T OF STATE
    BUREAU OF CONSULAR AFFAIRS CHINA JUDICIAL ASSISTANCE
    INFORMATION (2019). ........................................................................12

*Taking Voluntary Depositions of Willing Witnesses,*
    7 FOREIGN AFFAIRS MANUAL 920 (2021).............................................13

# I.    **INTRODUCTION**

On August 23, 2022, Plaintiff Glam and Glits Nail Design, Inc. ("Plaintiff" or "G&G") requested a briefing schedule so that it could attempt to persuade this Court away from its initial position disallowing the remote deposition of a Chinese citizen located in mainland China, which according to every other court addressing the issue, violates Chinese law. Despite filing over 500 pages of documents to support its argument, Plaintiff's moving brief [Dkt. 267] ("Motion" or "Mot.") fails to cite to a single case supporting its position.  Plaintiff's strained reading of Article 284 [formerly 277] of the Chinese Civil Procedure Law as limiting its breath to investigations conducted by foreign courts not only does violence to the article's plain meaning but has not been adopted by any court anywhere.

Article 284 states, in pertinent part, that "**no foreign** authority or **individual shall**, **without permission of the People's Republic of China** … investigate and **collect evidence in China**."  Under the laws of the United States, a remote deposition takes place where the witness answers questions (Fed. R. Civ. P 30(b)(4)), and a deposition is plainly the collection of evidence whether compelled or voluntary. Plaintiff's request violates the plain meaning of Article 284, and for this Court to grant such a request would be a direct affront to international norms and comity.  As recently articulated by the Superior Court for the Commonwealth of the Northern Mariana Islands in rejecting a similar request, "No cases have been found in which a court knowingly allowed testimony by video from China despite its likely illegality, but at least six federal district courts have not permitted testimony from China because of its likely illegality."[1] While many domestic parties have made the same request as Plaintiff does here, such a request has never been granted and there is no reason for this Court to be the first.

---

[1] *See Modern Investment, Inc. et al. v. Sunleader (Saipan) Co. Ltd., et al.*, Civil Case No. 19-0266 (N. Mar. I. Commw. April 8, 2021), *available at* http://www.cnmilaw2.org/pdf/superior/21-04-08-CV19-0266.pdf.  For the Court's convenience, the case is attached to the Declaration of John Shaeffer as Exhibit 1.

## II.   **RELEVANT BACKGROUND**

This lawsuit involves three design patents owned by Plaintiff that are essentially the same; two of which are simply components of the first.  The genus patent, U.S. Design Patent No. D758,737 ("the '737 Patent"), is for a nail polish bottle-and-cap.  Dkt. 44 Ex. B.  Its progeny are the designs for the cap and bottle components of the '737 Patent separated into cap [U.S. Design Patent No. D813,551] and bottle [U.S. Design Patent No. D836,444]. Dkt. 44 Exs. C-D.  These three patents are collectively referred to herein as the "Patents-in-Suit."

Plaintiff alleges, among other things, that some of defendant iGel Beauty, LLC's ("iGel") gel and nail lacquer bottle/cap combinations infringe the Patents-in-Suit and its asserted Kiara Sky trade dress.  Dkt. 44.  Defendants[2] challenge the validity of the Patents-in-Suit because, among other reasons, the named inventors, Ana Tan and Khoa Duong (the co-owners of G&G) cannot corroborate their contention that they both (1) conceived of the Patents-in-Suit, and (2) communicated that conception to their former Chinese manufacturer/supplier who drew the schematics that matured into the Patents-in-Suit.  Dkts. 109, 188.

During discovery, Plaintiff produced several Chinese schematics it received from its former bottle supplier that were drawn by different individuals, one of whom was named YiJian Jiang. *See* Dkt. 111-1 at Page ID #s 3587-3610.  YiJian Jiang, however, stopped working for Plaintiff's then bottle supplier shortly after the schematics were made.  YiJian Jiang was never identified as a potential witness by Plaintiff during the discovery period either in response to any discovery requests or in its Rule 26 disclosures.

Plaintiff admits that since it initiated this litigation more than two-and-a-half years ago, Defendants have been questioning Plaintiff's claim that its owners are the "inventors" of what is claimed in the Patents-in-Suit. Promptly after completing the

---

[2] "Defendants" collectively refer to defendants iGel, Daniel Bui, Tu Bui, Alvin Bui, and Andrew Bui.

depositions of Tan and Duong, and months before the discovery cutoff, Defendants moved for partial summary judgment of Plaintiff's design patent infringement claims because, among other reasons, Plaintiff could not corroborate its owners' assertions that they invented what is claimed in the Patents-in-Suit as required by controlling Federal Circuit law. Dkt. 109. In opposition, Plaintiff asserted that Defendants could not overcome the presumption that the inventors' claim of inventorship was valid based on their own testimony although it was uncorroborated. Dkt. 135.

In the Court's tentative decision, the Honorable Judge James V. Selna ruled that corroboration was not required in this case because, according to the Court, Defendants' inventorship defense was not asserting "prior art" that the named inventors needed to overcome, and a question of fact existed as to whether the named inventors had contributed to the schematic that was the earliest physical evidence of conception. In their request for oral argument, Defendants reiterated that this schematic prepared by Plaintiff's bottle supplier was evidence of a prior conception akin to prior art that, consistent with controlling precedent, Plaintiff could not overcome simply with the testimony of the named inventors. Put differently, corroborating evidence was still needed. Despite this controlling law, the Court stuck with its tentative and did not hold any oral argument. Dkt. 164.

Months later and after the close of discovery, on May 9, 2022, Plaintiff filed a motion for partial summary judgment challenging Defendants' affirmative defenses including their challenge to inventorship even though the Court had already held, months earlier, that an issue of fact remained to be decided. Dkt. 173. Due to the volume of documents Plaintiff filed (including two *Daubert* motions), Defendants requested the Court extend their one week response date and correspondingly extend the trial date so that any decision on these motions would occur before the parties' pretrial filings were due. Dkt. 165. Plaintiff opposed this motion on the grounds that it would be prejudiced by even a short trial delay. Dkt. 166. The Court denied Defendants' request. Dkt. 168.

On May 16, 2022, Defendants filed their opposition and requested that the Court *sua sponte* reconsider its prior decision.  Dkt. 188.  Defendants based this request on the fact that Plaintiff did <u>not</u> dispute that: (1) it could not corroborate the testimony of the named inventors that the schematic that forms the basis of what is claimed in the Patents-in-Suit was derived from their conception; and (2) it could not corroborate that their conception, if any, was communicated to the bottle supplier <u>before</u> the creation of this schematic.   In reply, Plaintiff conceded its inability to corroborate the inventors' testimony, but again claimed no corroboration was required.  Dkt. 203.

The Court's tentative ruling indicated that it would deny Plaintiff's motion with respect to Defendants' inventorship defense but would not *sua sponte* reconsider its prior ruling.  The Court did, however, indicate that it would grant Plaintiff's motion with respect to Defendants' inequitable conduct defense because the named inventors believe that they invented what is claimed in the Patents-in-Suit.  The Court, in its tentative, gave the parties until June 16, 2022, to file a request for oral argument.  While Defendants timely filed such a request (Dkt. 216), Plaintiff did not.

Days after its oral argument brief was due but before the Court issued its formal order, on June 21, 2022 – six months after the close of discovery – Plaintiff filed an untimely brief in support of oral argument that attached a declaration purporting to be from YiJian Jiang, a Chinese national, who claimed to have drawn the relevant schematic and stated that his schematic was based on a design disclosed to him by his boss.  Dkt. 228 at 2.  Plaintiff indicated that while it had been in contact with YiJian Jiang for some time, YiJian Jiang had previously refused to get involved.  Plaintiff also indicated that it did not know why YiJian Jiang changed his mind. *Id*. The Court requested Defendants respond to the new evidence included in Plaintiff's brief. Dkt. 229.

After receiving this declaration, Defendants immediately contacted their bottle supplier (the same supplier [formerly] used by Plaintiff) and inquired about whether the information in YiJian Jiang's declaration was accurate. The bottle supplier indicated that both YiJian Jiang and the sales representative who managed Plaintiff's account had left

the company years ago. While the bottle supplier reached out to the former sales representative about the contents of the declaration, that individual did not want to get involved in this dispute. The bottle supplier, however, indicated that the contents of the YiJian Jiang declaration were incorrect.

Concerned that the Court would reconsider its tentative ruling based on this late filed declaration, Defendants asked their bottle supplier to respond to YiJian Jiang's declaration, and Xinhui Wang, who is a principal with this manufacturer, agreed to, and did, provide a declaration countering YiJian Jiang's purported declaration. Dkt. 240.

After receiving the counter-declaration, on June 30, 2022, Plaintiff filed an *ex parte* application requesting that the Court re-open discovery and continue the trial date so that it could pursue a deposition of Xinhui Wang and give Defendants the "opportunity" to solicit a deposition of YiJian Jiang. Dkt. 243.  In its application, Plaintiff acknowledged that since Chinese law prohibited a witness from sitting for a deposition in mainland China, arrangements would need to be made to have the representative of the bottle manufacturer deposed somewhere else. *Id.*; Dkt. 242.  The Court simply signed Plaintiff's late-filed proposed order, which continued trial to September 13, 2022, and reopened discovery for the purpose of taking these depositions.

Thereafter, Defendants requested that Plaintiff provide them with contact information for YiJian Jiang.  Surprisingly, Plaintiff contended that it did not have any contact information for YiJian Jiang.  Shortly thereafter, however, on August 1, 2022, Plaintiff served Defendants with a "Notice of Deposition," which it designated as "Highly Confidential – Attorneys Eyes Only," indicating the remote deposition of YiJian Jiang would occur just two days later beginning after business hours on August 3, 2022. Dkt. 257-2 at 21.  Defendants immediately reached out to Plaintiff to inquire whether the deponent would be in mainland China at the time of the deposition.  Plaintiff coyly indicated that it did not know. *Id.* at 19.  Defendants then reached out to the Newport Beach attorney who Plaintiff identified as counsel for the witness and who later confirmed that the witness would be in mainland China.

Learning that this deposition would proceed in a manner that Defendants believed was contrary to Chinese law, Defendants responded to the video link received for this deposition from the deposition service [Planet Depos] that Defendants believed this deposition would conflict with Chinese law.  The next morning, the deposition service confirmed that it would not report this deposition and acknowledged, as is stated on its own website, that Chinese law prohibits the taking of depositions where the witness is in mainland China.  Since Plaintiff indicated an intent to proceed anyway, Defendants, on August 2, 2022, the day after receiving Plaintiff's deposition notice, moved for a protective order on an *ex parte* basis to ensure that any deposition of a Chinese citizen would be conducted outside mainland China and in conformity with the laws of both the United States and China.  Dkt. 257.

Plaintiff's opposition to this *ex parte* application was unhinged.   Dkt. 258.  Plaintiff accused Defendants of intimidating its reporting service and falsely alleged that Defendants' bottle supplier had threatened YiJian Jiang, and that Defendants owed their bottle supplier over two million dollars and had used the threat of non-payment to secure favorable testimony from Xinhui Wang. *Id*. These allegations were simply false and unsupported by any evidence.  Plaintiff also asked the Court for a gag order to preclude Defendants from so much as suggesting to anyone that the deposition of a witness sitting in mainland China would violate any law.   *Id*.   Judge Selna referred Defendants' application for a protective order to this Court. Dkt. 262.

Thereafter, Plaintiff filed an *ex parte* application requesting that the September 13, 2022 trial date be continued until it could depose its declarant.  Dkt. 263.  Shortly after Defendants filed their opposition (Dkt. 264), the Court vacated the trial date until an undetermined time after it rules on Plaintiff's pending summary judgment motion as well as other pending motions.  Dkt. 265.

On August 23, 2022, a hearing was held with this Court on Defendants' *ex parte* application.  Dkt. 266.  During the hearing, Plaintiff requested a briefing schedule to allow it an opportunity to persuade the Court away from its initial position disallowing

the remote deposition of a Chinese national located in mainland China based on a law review article Plaintiff's counsel had read. The Court granted Plaintiff's request for a briefing schedule and set a hearing for September 27, 2022, at 10:00 a.m. *Id.*

The deference that has been afforded Plaintiff, but not reciprocated to Defendants, is extraordinary. Such indulgences, however, should not extend to permitting a deposition to go forward in a manner all courts have held would contravene Chinese law. Nothing whatsoever supports an exception to this unanimous conclusion.

## III.   LEGAL STANDARD

### A.   Article 284 of the Chinese Civil Procedure Law

At issue in this matter is whether Article 284 of the Chinese Civil Procedure Law permits the remote deposition of a Chinese citizen located in mainland China. Article 277, the predecessor to Article 284 [and identical to it], was translated in a previous federal case as follows:

> Request for and to provide judicial assistance shall be made through channels prescribed by international treaties concluded or acceded to by the People's Republic of China; or in the absence of such a treaty, shall be made through diplomatic channels.

> A foreign embassy or consulate to the People's Republic of China may serve process on and investigate and collect evidence from its citizens but shall not violate the laws of the People's Republic of China and shall not take compulsory measures.

> Except for the circumstances in the preceding paragraph, **no foreign** authority or **individual shall**, **without permission** from the competent authorities of the People's Republic of China, serve process or **conduct investigation and collection of evidence within the territory of the People's Republic of China**.

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd*., No. 17-CV-02191-SK, 2019 WL 6134958, at *1 (N.D. Cal. Nov. 19, 2019) (quoting Article 277) (emphasis added); *see also* Mot. at 5:8-18 (quoting Article 284); Wagner Declaration, Dkt. 267-1 at 1, n.1 (Article 284 "remains identical" to Article 277).

**B.  <u>Remote Depositions Take Place Where the Deponent Answers Questions</u>**

Rule 30 of the Federal Rule of Civil Procedure allows for parties to stipulate to a deposition by remote means. Fed. R. Civ. P. 30(b)(4).  However, a remote "deposition takes place where the deponent answers the questions." *Id*.; *Tsien v. Bd. of Regents of Univ. Sys. of Georgia*, No. CV 121-008, 2021 WL 6617308, at *2 (S.D. Ga. Dec. 20, 2021) (recognizing that remote deposition of Chinese citizen sitting in mainland China would be a deposition taken in mainland China). Thus, for purposes of this analysis, under U.S. federal law, a deposition takes place in China when the deponent is sitting in China regardless of whether the deposition is being taken by remote means.

**C.  <u>Federal Rule of Civil Procedure 44.1 and Defendants' Exhibits 2 – 4</u>**

As cited in Plaintiff's Motion, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law."  Fed. R. Civ. P. 44.1; Mot. at 2:14-28.

Pursuant to Federal Rule of Civil Procedure 44.1, attached to the concurrently-filed Declaration of John Shaeffer ("Shaeffer Decl.") as Exhibits 2 through 4, Defendants submit the following documents, which were filed in other cases addressing similar questions of Chinese law, which the Court may review here in considering Plaintiff's Motion:

- **<u>Exhibit 2</u>**: DECLARATION OF JAMES V. FEINERMAN dated April 11, 2012, submitted in *U.S. Securities and Exchange Commission v. Deloitte Touche Tohmatsu CPA LTD*., Case No. 1:11-cv-00512-GK at Dkt. No 23-2 (D.D.C. April 11, 2012) (hereinafter, "Feinerman Decl.").[3]

---

[3] In *U.S. Securities and Exchange Commission v. Deloitte Touche Tohmatsu CPA LTD*, the SEC sought the enforcement of a subpoena on an accounting firm in mainland China. [Dkt. No. 1]. Deloitte opposed and submitted, among other documents, the Feinerman Decl. [Dkt. No. 23]. The SEC later filed a Notice to the Court advising that it would be working with the China Securities Regulatory Commission. [Dkt. No. 68].

- **Exhibit 3**: Affidavit of Nick (Qinghui) Liu On The Issues Of Chinese Law In Support Of Defendant's Response To Plaintiff's Motion To Compel Forensic Inspection Pursuant To The Federal Rules Of Civil Procedure, dated December 2, 2020, submitted in *Inventus Power v. Shenzhen Ace Battery*, Case No. 1:20-cv-3375, Dkt. No. 106-1 (N.D. Ill. Dec. 2, 2020), cited in *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 499 (N.D. Ill. 2021) (hereinafter, "Liu Decl.");[4] and

- **Exhibit 4**: A letter from the Chinese Ministry of Justice submitted in *Inventus Power*, 1:20-cv-3375, Dkt. No. 105-2 (N.D. Ill. Dec. 2, 2020) and considered in *Inventus Power*, 339 F.R.D. 487 (N.D. Ill. 2021) (hereinafter, "Chinese Ministry of Justice Letter").

## IV.   ARGUMENT

### A.   Plaintiff's Interpretation of Article 284 Ignores its Plain Language

Plaintiff offers Robert K. Wagner's interpretation of Chinese law as its sole support for taking a remote deposition in mainland China. Based on Mr. Wagner's reading of Article 284, Plaintiff avers that a deposition within the territory of China does not constitute an investigation or the collection of evidence when the deponent volunteers to be deposed. Mot. at 5-6. According to Plaintiff, Article 284 only applies to "the actions of the court to collect evidence," but where, as here, attorneys take the voluntary deposition of a Chinese citizen located on Chinese soil, this conduct is considered "self-collect[ion]" and falls outside the scope of Article 284. *Id.* at 6:14-21.

---

[4] In *Inventus Power v. Shenzhen Ace Battery,* the court determined the scope of jurisdictional discovery and whether to permit depositions of individuals in China. "Chinese legal expert Nick Liu, [opined] Article 277 prohibit[ed] … a Chinese company[] from providing discovery for use in foreign litigation without permission from Chinese authorities through the Hague Convention procedures." 339 F.R.D. at 499–500. The court also reviewed the Chinese Ministry of Justice Letter. "In its letter, the Ministry of Justice reviewed Article 277 and explicitly informed [the party] that it 'may not provide directly to the United State[s] court (including electronic submission) documents located within China' without proceeding under the Hague." *Id.* at 499.

Plaintiff's argument, however, is unsupported by any case law and ignores the plain language of the text of Article 284, which expressly states, "**no foreign**… **individual shall**, without permission from the competent authorities of the People's Republic of China, … investigate and collect evidence within the territory of the People's Republic of China." *Id*. at 5:15-18 (emphasis).  While it may be true that Chinese citizens may informally provide documents to a foreign proceeding because that would be the action of a Chinese national and not a foreign individual, it appears that "deposing witnesses" is an "investigative power reserved for Chinese judicial and executive authorities." *Motorola v. Hytera*, 365 F. Supp. 3d 916, 927 (N.D. Ill. 2019). Plaintiff's argument that deposition testimony falls within the ambit of "self-collection" makes little sense since the taking of depositions are disallowed by litigants and reserved for Chinese authorities.  For this reason, in *Modern Investment, Inc. v. Sunleader (Saipan) Co. Ltd.,* which was decided during the COVID pandemic, the court found that authorizing a remote deposition of someone sitting in China "would be exercising the investigative power normally reserved for the Chinese government" and therefore in violation of Chinese law. *See* Ex. 1, 19-0266 at 13.

### B.   Plaintiff's Interpretation of Article 284 Is Contradicted By Other Experts

Plaintiff's position is also rejected by the EXPERT OPINION OF PROFESSOR JIE (JEANNE) HUANG, which **Plaintiff** itself submitted as Exhibit 11 to Mr. Wagner's declaration. Dkt. 267-12.  Professor Jie Huang suggests that "self-collect[ion]" applies only to written discovery (*id*. at p. 11, ¶¶ 28-29, 39), but depositions in mainland China do violate the Article. *See id*. at p. 12 ¶¶ 33-34 ("Depositions outside Mainland China do not violate Article 277 because that only applies to the taking of evidence in mainland China"; "Depositions in Hong Kong and Macau (or anywhere else outside of Mainland China) are not considered taking evidence in Mainland China.").

Professor Jie Huang further opined:

> Cross-examining or deposing a Chinese witness located in Mainland China via video link is different from conducting depositions – by video link or otherwise – wholly outside of Mainland China. There is no violation of Article 277 **if** a deposition is taken **outside Mainland China**, for example, in Hong Kong or Macau, regardless of whether the deposition is conducted by video link or in person.

*Id.* at p. 13 ¶ 36 (emphasis added). Additionally, and again contrary to Wagner's declaration, Huang cites to government action taken with respect to Article 284 suggesting the Chinese Government will not permit foreigners to pursue any discovery of witnesses who are in mainland China. *Id.* at p. 8 ¶ 22 ("One of the few recorded examples of a violation of Article 277 was in 1988, when a U.S. party went to China and collected evidence from a Chinese national in the presence of a U.S. consular official. Consequently, the Chinese Ministry of Foreign Affairs protested.").

China's prohibition regarding this type of discovery absent permission from the government is not unique.  As Plaintiff correctly notes, China is "akin to a civil code jurisdiction." Mot. at 6:16-17.  "Under a civil law approach, the collection of evidence is viewed as an act requiring significant government involvement, which cannot be undertaken solely by individual litigants." Ex. 2, Feinerman Decl. at p. 3. "Dozens of countries, from Albania and Argentina to Venezuela, including Germany, Italy, Poland, Portugal, and Switzerland, take this position in the civil litigation context,…China's position … is thus neither unique nor even unusual."[5] *Id.* at p. 8, ¶ 18.

"In civil law countries the court conducts evidence gathering, rather than the parties. The purpose of judicial control is to safeguard individuals from undue coercion

---

[5] Plaintiff's counsel surely knows that Brazil has similar prohibitions with respect to taking discovery on its soil since he opposed a motion to compel the taking of discovery in Brazil.  *See Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. De Equip. Medico*, No. CIV 07-CV-309-L AJB, 2008 WL 81111, at *2 (S.D. Cal. Jan. 8, 2008) ("**It is undisputed that Brazil does not allow depositions of its nationals on its soil by American attorneys for use in courts in the United States, even if the deposition were to take place before a United States consular officer, with the assistance of a Brazilian attorney, or in any other manner**.") (citing Declaration of Matthew C. Lapple, filed May 24, 2005, Case No. 3:07-cv-0309, at Dkt. 18-1) (emphasis added).

---

137872369.1

and ensure that privileges are respected." *Id*. at p. 8 ¶19. "China's legislature and judicial branch have made it clear that allowing investigations and collection of evidence in China by foreign institutions **or individuals** would compromise China's sovereignty and the independence and integrity of the Chinese judicial system. No foreign institutions or individuals may engage in such activities within the territory of China unless permitted by law." Ex. 3, Liu Decl., at p. 5, ¶16 (emphasis added). Therefore, without permission from the Chinese authorities, the "only legal way for the requesting parties to obtain evidence in China" is through the Hague Evidence Convention. *Id*. at p. 8, ¶¶ 24-25. The Chinese Ministry of Justice Letter submitted in *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487 (N.D. Ill. 2021) reiterates this position:

> In the event that an oversea[s] jurisdiction intends to conduct discovery in the People's Republic of China, it shall submit such request in accordance with the rules and channels set forth in [The Convention on the Taking of Evidence Abroad in Civil or Commercial Matters] to the central authority of judicial assistance, which is the Ministry of Justice of the People's Republic of China.

Ex. 4, Chinese Ministry of Justice Letter.

### C.   The U.S. State Department Disagrees with Plaintiff's Position

Plaintiff's attempt to draw a distinction here between voluntary and non-voluntary testimony is not reflected in the text of Article 284. Nor is it in accord with U.S. law wherein a deposition is plainly the collection of evidence whether compelled or voluntary. *See* Fed. R. Civ. P. 30, 32. In fact, the U.S. State Department explains such testimony would be prohibited regardless of whether it is voluntarily given in a document titled, "Taking Voluntary Depositions of Willing Witnesses"[6] with violators facing arrest. The State Department guidance explicitly states:

---

[6] *Taking Voluntary Depositions of Willing Witnesses*, U.S. DEP'T OF STATE BUREAU OF CONSULAR AFFAIRS CHINA JUDICIAL ASSISTANCE INFORMATION (2019), *available at* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html (last visited Sept. 14, 2022).

---

**China does not permit attorneys to take depositions in China for use in foreign courts**. Under its Declarations and Reservations to the Hague Evidence Convention and subsequent diplomatic communications, **China has indicated that taking depositions, whether voluntary or compelled**, and obtaining other evidence in China for use in foreign courts may, as a general matter, **only be accomplished through requests to its Central Authority under the Hague Evidence Convention**. Consular depositions would require permission from the Central Authority on a case by case basis and the Department of State will not authorize the involvement of consular personnel in a deposition without that permission. **Participation in such activity could result in the arrest, detention or deportation of the American attorneys and other participants**.

*Id.; see also* CONSULAR AFFAIRS, U.S. DEPT. OF STATE, *Taking Voluntary Depositions of Willing Witnesses*, 7 FOREIGN AFFAIRS MANUAL 920 (2021), *available at* https://fam.state.gov/fam/07fam/07fam0920.html (last visited Sept. 14, 2022) ("Some countries prohibit taking depositions.  For example…The People's Republic of China."); *Junjiang Ji v. Jling Inc.*, No. 15-CV-4194 (SIL), 2019 WL 1441130, at *4 (E.D.N.Y. Mar. 31, 2019) ("China regards the administering of oaths by foreign attorneys and consular officials as a violation of China's judicial sovereignty" and, consequently, "[w]hen foreign attorneys or consular officials administer an unauthorized oath in China, the penalties may include arrest, detention, expulsion, or deportation of all participants in the oath."). Accordingly, Plaintiff's novel interpretation is unavailing, and no case has adopted it, as addressed further below.

**D.  Courts Around the Country Consistently Reject Requests to Depose Chinese Citizens in Mainland China**

Courts around the country without exception reject requests to take depositions of Chinese citizens in mainland China whether remotely or otherwise and whether voluntarily or involuntary because courts repeatedly recognize that "[w]ith respect to depositions, it is undisputed that the 'law of China prohibits' depositions - voluntary or compelled - for use in foreign courts 'within the borders of People's Republic of China without permission' from Chinese authorities through the Hague Convention

procedures." *Inventus Power*, *supra*, 339 F.R.D. at 500; *see e.g.*, *Yan v. Zhou*, No. 18-CV-4673(GRB)(JMW), 2021 WL 4059478, at *3 (E.D.N.Y. Sept. 7, 2021) ("The law of China prohibits Defendants from being deposed while they are within the borders of People's Republic of China without permission from the authority of the People's Republic of China."). "Courts have recently confirmed that this prohibition **extends even to remote testimony**." *Inventus Power*, 339 F.R.D. at 500 (emphasis added); *see Zhizheng Wang v. Hull*, No. C18-1220RSL, 2020 WL 4734930, at *1 (W.D. Wash. June 22, 2020) ("the Court will not require defendant to bet on" the "possibility that the Chinese authorities would construe the law narrowly"); *Junjiang Ji*, *supra*, 2019 WL 1441130, at *11 (finding that conducting the plaintiff's trial testimony remotely while he was located in China violated Article 277); *Tsien*, *supra*, 2021 WL 6617308, at *2 (denying motion for remote video deposition of Chinese citizen); *U.S. v. Tao*, No. 19-20052-JAR, 2021 WL 5205446, at *9 (D. Kan. Nov. 9, 2021) ("the remote depositions would put participants at risk of violating Chinese law"; requiring Chinese government to authorize deposition first); *Liu v. Chan*, No. 18-CV-05044-KAM-SJB, 2022 WL 2467015, at *3 (E.D.N.Y. Jan. 26, 2022) (refusing to allow deposition in China despite COVID and ill party); *Flexsteel Pipeline Techs., Inc. v. Chen*, No. 5:16-CV-239-TKW-GRJ, 2019 WL 13164175, at *2 (N.D. Fla. Nov. 26, 2019) ("The Court also found that the depositions could not occur in China, due to legal constraints there on the taking of sworn testimony for foreign proceedings."); *Melaleuca, Inc. v. Kot Nam Shan*, No. 4:18-CV-00036-DCN, 2018 WL 1952523, at *7 (D. Idaho Apr. 24, 2018) (discussing China's policy forbidding depositions for use in foreign courts and stating the policy); *Excel Fortress Ltd. v. Wilhelm*, No. CV-17-04297-PHX-DWL, 2020 WL 1330664, at *4 (D. Ariz. Mar. 23, 2020) ("Plaintiffs were required to comply with the Hague Convention procedures that govern depositions of foreign citizens outside of the U.S."); *Brown v. China Integrated Energy, Inc*., No. CV11-2559-BRO(PLAx), 2014 WL 12580245, at *2 (C.D. Cal. Aug. 6, 2014) ("…China is not an available forum for any of the depositions. Thus, all of the deponents will have to travel outside of China regardless of where the

depositions occur."); *Shi Min Chen v. Hunan Manor Enter., Inc*., No. 17CIV802GBDGWG, 2020 WL 4932777, at *2 (S.D.N.Y. Aug. 24, 2020) ("[T]his Court concluded that video depositions could not be held in China as doing so would violate Chinese law."); *JUUL Labs Inc. v. Chou*, No. 2:21-CV-03056-DSF-PD, 2022 WL 2165411, at *6 n.1 (C.D. Cal. Feb. 11, 2022) ("Defendants do not dispute Plaintiff's contention that taking the depositions in mainland China, even remotely, without the permission of the Chinese government would violate Article 277 [] and subject participants to criminal liability."); *U.S. v. Proceeds from Sale of a Condo. Located at Ritz Carlton in Los Angeles California*, No. SACV-1501110-JVS(DFMx), 2020 WL 10895336, at *2 (C.D. Cal. Mar. 30, 2020) (recognizing under Chinese law deposition could not occur in China and addressing requested permission from the Philippines under the Mutual Legal Assistance Treaty) (McCormick, J.); *Shenzen Synergy Digital Co., Ltd. v. Mingtel*, Civil Action No. 4:19-cv-00216, 2021 WL 6072565 *2 (E.D. Tex. Dec. 23, 2021) ("Plaintiff has selected Macau for the location of the remote testimony because Macau allegedly does not have the same prohibitions as mainland China").[7]

Plaintiff's Motion ignores these cases, cites to no case in support of its position, and urges the Court to, instead, follow to advice of Mr. Wagner, whose opinion comes with zero assurance that the Chinese authorities would agree with him. *See* Wagner Declaration (Dkt. 267-1) ¶ 59 ("**I cannot rule out the possibility that the PRC authorities could take a different view**") (emphasis added); Mot. at 6:10 ("Plaintiff knows of no official Chinese judicial interpretation of Article 284."). While Mr. Wagner may believe his opinions are correct, this is more than a mere intellectual exercise; even

---

[7] *See also* Craig Allely, *Successful Depositions in International Litigation*, 37 No. 4 LITIGATION at 12, 13 (Summer 2011) ("And beyond being merely frowned upon, participation in unauthorized depositions can result in serious sanctions, from deportation to the arrest and detention of the attorneys involved and other participants. (Just hope that you didn't also bring your judge along to supervise the foreign deposition and rule instantly on your opponent's groundless objections: He or she could also be arrested for performing unauthorized judicial functions.)").

Mr. Wagner concedes some risk of "administrative or criminal sanction" exists for getting it wrong.  *See* Wagner Declaration (Dkt. 267-1) ¶ 60.

While parties may stipulate to foreign depositions, they "cannot obviate compliance with conventions signed by the U.S. and China, nor can [they] violate Chinese domestic law." Fang Shen, *Are You Prepared for This Legal Maze? How to Serve Legal Documents, Obtain Evidence, and Enforce Judgments in China*, 72 UMKC L. Rev. 215, 227 (2003).  As aptly stated by one court, "While there is certainly a possibility that the Chinese authorities would construe the law narrowly so that it does not apply to foreign individuals who do not set foot within the borders of the People's Republic of China and who have the cooperation of the Chinese citizen being deposed [citation], **the Court will not require defendant to bet on that outcome**." *Zhizheng Wang*, 2020 WL 4734930, at *1 (emphasis added).  Neither should this Court.

### E.   Courts Have Rejected Richard K. Wagner's Opinions on Chinese Law

Defendants are not aware of any case cited in Mr. Wagner's *curriculum vitae* (Dkt. 267-3) in which any court adopted his opinion with respect to Article 284 (or Article 277) that he proffers here. To the contrary, Mr. Wagner's interpretation of Chinese law has been rejected by at least two courts:

In *Smart Study Co. v. Acuteye-Us,* No. 1:21-CV-5860-GHW, 2022 WL 2872297, at *1 (S.D.N.Y. July 21, 2022), Mr. Wagner opined that Chinese law would allow for the service of a summons and complaint on a Chinese defendant via email.  *Id*. at *1, *12. The District Court for the Southern District of New York rejected Mr. Wagner's interpretation and found that service without the consent of the Ministry of Justice was improper. *Id*. at *13.

In  *Modern Investment, Inc. et al. v. Sunleader (Saipan) Co. Ltd., et al*., the Court reviewed Mr. Wagner's law article in considering whether to allow for the remote deposition of a Chinese citizen in mainland China. Ex. 1 at p. 14 n.3. The Court for the Northern Mariana Islands noted Mr. Wagner's article "did not cite to any case law which

supports his opinion, in making his assertions." *Id.* at p. 14. As such, Mr. Wagner's opinion was given little, if any, weight.[8]

"Given this – and the absence of any authority to the contrary – there is no doubt that … Chinese law bars taking the depositions … in mainland China unless the Hague Convention procedures are followed." *Inventus Power*, 339 F.R.D. at 500 (citing *Zhizheng Wang*, 2020 WL 4734930, at *1 ("Defendant's interpretation of Chinese law [barring depositions] is reasonable given the language of Article 277, the State Department's advisory, and U.S. case law regarding Article 277.").

## V.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's request to take the remote deposition of YiJian Jiang in mainland China.

Dated:  September 19, 2022

Respectfully submitted,

FOX ROTHSCHILD LLP

By  */s/ John Shaeffer*
John J. Shaeffer
Joshua Bornstein
Attorneys for IGEL BEAUTY, LLC, DANIEL BUI, TU BUI, ALVIN BUI, and ANDREW BUI

---

[8] Mr. Wagner's *curriculum vitae* states that he was a "consulting expert" in an action before the "United States District Court for the Northern Mariana Islands (Saipan)" wherein he "advised on Article 277."  Since Mr. Wagner does not identify the case, Defendants are unsure whether it is *Modern Investment, Inc. et al.* or a different case in the Northern Mariana Islands addressing Article 277.